[ECF No. 58]

### THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

|  |  |
|---|---|
| **GRANT LEADING TECHNOLOGY, LLC,**<br><br>**Plaintiff,**<br><br>v.<br><br>**REVENUE SOLUTIONS, INC.,**<br><br>**Defendant.** | **Civil No. 23-21214 (KMW/EAP)** |

### OPINION

This matter comes before the Court on the Motion of Defendant Revenue Solutions, Inc. ("Defendant" or "RSI"), ECF No. 58 (Def.'s Mot.), seeking leave to file an amended answer to assert four counterclaims against Plaintiff Grant Leading Technologies, Inc. ("Plaintiff" or "GLT"). Plaintiff filed opposition to the motion, ECF No. 63 (Pl.'s Opp.), to which Defendant replied, ECF No. 69 (Def.'s Reply). Each party filed supplemental briefing in response to this Court's Order, ECF No. 82 (Dec. 23, 2025 Order). ECF No. 84 (Def.'s Supp. Br.); ECF No. 85 (Pl.'s Supp. Br.). The Court has reviewed the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons that follow and for good cause, Defendant's Motion is **DENIED**.

### FACTUAL BACKGROUND

This case begins—as so many business disputes often do—with an alleged breach of contract. Since its initial filing in 2023, however, RSI alleges the case has evolved beyond a "mere business dispute" and now seeks leave to amend its answer and assert four counterclaims against GLT for what it describes as "a textbook example of bad faith, betrayal, and corporate sabotage."

*See* ECF No. 58, Ex. A. (Def.'s Prop. Am. Answer & Countercls.) at 19, ¶ 1.  To understand this alleged evolution, the Court summarizes the allegations from both parties before proceeding with its analysis.

**A.      The Parties to This Litigation**

Plaintiff GLT is a limited liability company based in Maryland with expertise in software application testing.[1]  *See* ECF No. 1-1 (Compl.) ¶¶ 4, 11.  Defendant RSI is a software corporation headquartered in Massachusetts "primarily serving state and local governments and providing software solutions for their tax administration and collection needs."  Def.'s Prop. Am. Answer & Countercls. at 21, ¶ 8.

**B.      The State of New Jersey's Bid Solicitation[2]**

This dispute arises from RSI's alleged breach of contract and breach of the implied covenant of good faith and fair dealing in connection with a New Jersey state bid solicitation for certain tax reporting services.  *See generally* Compl.  In or around November 2019, the Procurement Bureau within the New Jersey Department of the Treasury issued a bid solicitation for quotes from qualified vendors "to install a Commercial Off-The-Shelf ('COTS') Integrated Tax System ('ITS') to replace the State's outdated information technology systems and infrastructure" (the "Project").  *Id.* ¶¶ 6, 7.  "Knowing of GLT's reputation and experience as experts in the software testing field, RSI asked GLT to partner with RSI as a strategic partner" on the bid.  *Id.* ¶ 12.  GLT alleges that the parties "discussed and agreed to terms for labor costs and other costs for services in connection with GLT's designated responsibilities on the Project[,]"

---

[1]  GLT is "an established Service-Disabled Veteran-Owned Small Business and a certified State of New Jersey Minority Business Enterprise (MBE)."  Compl. ¶ 4.  According to GLT, the bid solicitation included a set-aside for a small business and/or disabled veteran-owned business. *Id.* ¶ 9.

[2]  All facts discussed in Sections B through E are taken from GLT's Complaint unless otherwise noted.  *See* Compl.

including that "GLT would have full responsibility for the software testing and related quality assurance and management aspects of the Project in exchange for a set percentage of the total contract value, which was ultimately agreed [upon] between the Parties and represented by RSI to the State to be 10%." *Id.* ¶ 14.

**C.      RSI's Quote and Subsequent Best and Final Offer**

On or about April 6, 2021, RSI submitted a quote in response to the bid solicitation issued by the State. *Id.* ¶ 15. "RSI . . . represented to the State that 'after in-depth discussions and negotiations,' RSI and GLT were 'in agreement regarding scope, type, and pricing of services to be subcontracted' [to GLT]." *Id.* ¶ 23.

GLT alleges that on July 23, 2021, RSI submitted its Best and Final Offer ("BAFO") for the Project that "increased GLT's set-aside from 9% to 10% of the total contract value, which equates to approximately $8.5 million." *Id.* ¶¶ 34, 36. According to GLT, "RSI continued to represent in the BAFO that . . . RSI and GLT were in agreement as to the scope, type, and pricing of services to be subcontracted to GLT[,]" *id.* ¶ 38, and that "RSI and GLT were in fact in agreement" as to these terms, including "a firm-fixed price of 10% of the total contract value of the Project," *id.* ¶ 39.

**D.      The Master Subcontract Agreement**

In or around January 2022, the State awarded the contract (the "NJ Contract") to RSI "because RSI's BAFO Quote conformed to the Bid Solicitation and was identified as most advantageous to the State, thanks to GLT's promised participation." *Id.* ¶ 40.

On February 22, 2022, GLT and RSI entered into the Master Subcontractor Agreement ("MSA") at the center of this litigation. *Id.* ¶ 50. GLT alleges that the MSA was "fully executed . . . and was considered to be the final agreement between the parties." *Id.* ¶ 53. The MSA

incorporates by reference a scope of work (SOW) that "includes all testing tasks along with the testing deliverables from the NJ Contract," *id.* ¶ 58, and "the scope, type, and pricing of services to be performed by GLT as agreed upon by RSI and GLT and as accepted by the State," *id.* ¶ 59.

**E.      The Proposed Revisions to the MSA's Scope of Work**

According to the Complaint, problems first arose between the parties in or about May 2022, when RSI's new in-house management team "attempted to purposefully prevent GLT from performing the work reserved to GLT under the [MSA] and the NJ Contract under the guise of adding additional detail to the SOW." *Id.* ¶ 69.  In or about June 2022, RSI allegedly requested that GLT amend the SOW attached to the MSA for "minor non-substantive changes," and GLT promptly complied. *Id.* ¶¶ 70, 71.  In July 2022, RSI made its second request to amend the SOW with non-substantive changes, and GLT again complied. *Id.* ¶ 72.  After these initial rounds of "non-substantive changes," GLT contends that RSI's tone and approach shifted: according to GLT, RSI "used [the opportunity to amend] to propose material modifications to the [MSA] and SOW and then, in bad faith, took the position that GLT could not begin work without such material modifications." *Id.* ¶ 73.  GLT alleges that "RSI's management . . . baselessly contended that the agreed-upon SOW was incomplete and used that assertion as pretext to completely redefine and minimize the agreed-upon scope, type, and pricing of GLT's services in order to garner additional profits for RSI." *Id.* ¶ 74.  GLT asserts that it advised RSI that these "unilaterally and substantially revised terms were not acceptable," and in response, RSI "assured GLT that it still intended to comply with the 10% set-aside to GLT but believed . . . that the SOW required more detail." *Id.* ¶ 78.

**F.      Defendant's Alleged Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing**

According to GLT, RSI's representations "were made in bad faith to lull GLT into inaction while RSI secretly worked to substitute GLT" with another MBE as subcontractor.  *Id.* ¶ 79.  "While GLT continued to work in good faith to address RSI's unfounded purported concerns about the SOW, unbeknownst to GLT, RSI unilaterally decided to commence on its own the testing work that was to be performed by GLT."  *Id.* ¶ 80.  GLT alleges that "commencement of the testing work . . . was a blatant breach of the [MSA]."  *Id.* ¶ 83.  And "by intentionally excluding GLT from the Project, RSI was able to negotiate a more favorable subcontract for itself to retain a larger percentage of the value of the contract awarded for the Project."  *Id.* ¶ 87.

For these alleged actions, GLT brought four affirmative claims against RSI: breach of contract for RSI's failure to execute the SOW in accordance with the MSA, *see* Compl. ¶¶ 96-101 (First Count); breach of the implied covenant of good faith and fair dealing inherent to the MSA, *see id.* ¶¶ 102-07 (Second Count); or, in the alternative, promissory estoppel, *see id.* ¶¶ 108-13 (Third Count), and quantum meruit, *see id.* ¶¶ 114-19 (Fourth Count).

**G.      Defendant RSI's Allegations Against Plaintiff**[3]

Before the Court is Defendant RSI's Motion to Amend its Answer to Assert Counterclaims against GLT.  Def.'s Mot.  RSI alleges that GLT's president, Prince Levy, Jr. ("Levy"), "was secretly colluding" with RSI's former general counsel, Caroline LaFiura ("LaFiura"), and former program manager, William Murphy ("Murphy") to leverage proprietary and legal strategy information against RSI in the MSA contract dispute.  Def.'s Proposed Am. Answer & Countercls. at 19, ¶ 2.

---

[3]   All facts included in Section G are taken from Defendant's Proposed Amended Answer and Counterclaims.  *See* Def.'s Proposed Am. Answer & Countercls.

LaFiura served as RSI's General Counsel from approximately October 2021 until March 2022. *Id.* ¶¶ 17, 19. During her employment, she was allegedly bound by an employment agreement that included certain non-competition and confidentiality provisions that prohibited her from acting "in competition with RSI during her employment and for one year after the termination of her employment" and from "disclos[ing], at any time either during or after the termination of her employment, any RSI proprietary information." *Id.* ¶ 20. On March 7, 2022, RSI and LaFiura allegedly entered into a termination agreement ("LaFiura Termination Agreement") that "continued to bind" LaFiura to these provisions, "expanded upon her existing confidentiality obligations," and "expressly prohibited her from assisting other individuals or entities in bringing claims against RSI." *Id.* ¶ 21.[4]

Since at least November 2019 until his "removal" from the role on April 6, 2022, Murphy served as RSI's Program Manager and oversaw the creation of the MSA. *Id.* ¶¶ 9, 10, 26. During his employment, Murphy was allegedly bound by an employment agreement that included certain non-competition and confidentiality provisions that prohibited him from "engag[ing] in any activity in competition with RSI during his employment and for one year after the termination of his employment" and obliged him to "maintain the confidentiality of and to not disclose any RSI proprietary information." *Id.* ¶ 30. On June 10, 2024, RSI alleges Murphy signed a separation agreement ("Murphy Separation Agreement") that "continued to bind him" to these non-competition and confidentiality provisions, and "further prohibited him from assisting third parties with adverse interests to RSI." *Id.* ¶¶ 29, 31.

According to RSI, Murphy and LaFiura colluded with Levy from around July 2022 throughout September 2022 to influence the MSA SOW negotiations and to generate this lawsuit.

---

[4] The Court notes that neither LaFiura's employment agreement nor her termination agreement is attached to Defendant RSI's Proposed Amended Answer and Counterclaims.

*Id.* ¶¶ 33, 62.  Beginning in May 2022, Levy allegedly forwarded communications between GLT and RSI to Murphy for his input, *see id.* ¶¶ 34, 35, and LaFiura "provid[ed] legal advice to GLT in its negotiations with RSI."  *See id.* ¶ 39; *see also id.* ¶ 41 (providing examples of legal advice given, including sharing confidential and proprietary information about "RSI's historical practices" with other subcontractors); ¶ 46 (providing copies of documents "wrongfully retained" after her separation from RSI); ¶ 47 (providing an argument outline for GLT to use in its negotiations that included RSI's confidential information); ¶¶ 50, 51 (providing additional RSI confidential business information); ¶ 52 (offering to draft a complaint against RSI on GLT's behalf).  RSI also alleges LaFiura offered legal advice specific to the SOW negotiation, including reactions to proposed revisions and arguments against same.  *Id.* ¶ 60.

RSI further alleges that LaFiura advised GLT to ultimately file this lawsuit and offered "strategic advice to be used against her former employer and client, based on her knowledge of RSI's legal, business[,] and operational practices that she had gleaned from serving as RSI's general counsel."  *Id.* ¶ 68.  According to RSI, "[u]pon information and belief, GLT could not pursue its claims in their current form, partially survive dismissal of the Complaint, or continue to sustain a lawsuit against RSI without the ongoing assistance from and collaboration with LaFiura and Murphy."  *Id.* ¶ 86.

For this purported collusion, RSI seeks leave to amend to assert four counterclaims against Plaintiff GLT: aiding and abetting LaFiura's breach of her fiduciary duty to RSI, *see id.* ¶¶ 88-101 (First Counterclaim); civil conspiracy among Levy, Murphy, and LaFiura for attempting to unfairly negotiate the MSA and bring the present suit, *id.* ¶¶ 102-07 (Second Counterclaim); tortious interference with LaFiura's and Murphy's employment and termination contracts, *id.* ¶¶

108-21 (Third Counterclaim); and breach of the implied covenant of good faith and fair dealing inherent to the MSA, *id.* ¶¶ 122-29 (Fourth Counterclaim).

## **PROCEDURAL HISTORY**

On October 17, 2023, Defendant RSI removed this action to federal court. *See* ECF No. 1. On November 3, 2023, RSI moved to dismiss the complaint in its entirety. *See* ECF No. 10 (Motion to Dismiss). On July 12, 2024, the Court granted in part and denied in part RSI's motion, such that only GLT's demand for punitive damages was stricken and Counts I-IV of the Complaint remained. *See* ECF No. 21 (Motion to Dismiss Order). On July 26, 2024, RSI filed its answer to the complaint without asserting any counterclaims. *See* ECF No. 25 (Answer).

On August 29, 2025, RSI filed the present Motion. *See* ECF No. 58 (Mot. to Amend). On September 22, 2025, Plaintiff filed opposition, ECF No. 63, to which Defendant replied, ECF No. 69.[5] On December 23, 2025, the Court ordered simultaneous supplemental briefing from the parties concerning the appropriate choice of law analysis as to three of the four counterclaims. *See* ECF No. 82 (Dec. 23, 2025 Order). On January 16, 2026, the parties submitted their respective briefs. *See* ECF Nos. 84 (Def.'s Supp. Br.), 85 (Pl.'s Supp. Br.).

The Motion is now ripe for disposition.

---

[5]   On October 20, 2025, RSI submitted another reply brief. ECF No. 72. It appears the brief is identical to that which RSI submitted previously, ECF No. 69, and RSI only amended counsel's certification in support of its brief to provide public versions of previously sealed exhibits. *See* ECF No. 72-1 (Am. Certif.) ¶ 1 ("This Amended Reply Certification is exactly the same as the original Reply Certification (DE 69-1) as was filed with the Court on October 6, 2025, except for Exhibits D and I, which, as explained in footnotes 1 and 2 below, were initially filed under temporary seal."). For purposes of this Motion, the Court considers RSI's reply brief, ECF No. 69, and amended certification of counsel, ECF No. 72-1.

## DISCUSSION

A.     <u>**Whether Good Cause Exists Under Federal Rule of Civil Procedure 16**</u>

"'The threshold issue in resolving a motion to amend is the determination of whether the motion is governed by Rule 15 or Rule 16 of the Federal Rules of Civil Procedure.'" *Park v. Freehold Healthcare, LLC*, No. 18-11306, 2022 WL 19558164, at *1 (D.N.J. Feb. 15, 2022) (quoting *Karlo v. Pittsburgh Glass Works, LLC*, No. 10-1283, 2011 WL 5170445, at *2 (W.D. Pa. Oct. 31, 2011)).  When a party moves to amend or add a party "after the deadline for doing so set by the Court, the movant must satisfy the good cause standard of Rule 16 before the Court will turn to Rule 15." *Id.* (cleaned up).  In evaluating good cause under Rule 16, "courts typically ascertain whether the movant possessed, or through the exercise of reasonable diligence should have possessed, the knowledge necessary to file the motion to amend before the deadline expired." *Id.* at *2 (citation omitted).

In this case, the date to amend the pleadings expired on January 10, 2025.  *See* ECF No. 32 (Am. Scheduling Order) ¶ 1.  Defendant filed the present Motion seeking leave to file an amended answer and to assert counterclaims on August 29, 2025.  *See* Dkt. Sheet.  Because Defendant filed its Motion after the deadline to amend, the Court must first consider whether Rule 16's good cause standard is met.

RSI contends that it satisfies the good cause standard.  *See* ECF No. 58-1 (Def.'s Br.) at 8.  According to RSI, it only discovered the facts giving rise to its counterclaims after the deadline to amend the pleadings had passed.  *See* Def.'s Br. at 3-4 (explaining that GLT's supplemental production in mid-June 2025 revealed emails that led to the proposed counterclaims, after the deadline to amend the pleadings had passed in January 2025).  Upon review of the supplemental production, RSI raised the potential for a motion to amend its answer and add counterclaims to the

Court during the June 24, 2025 status conference.  RSI subsequently filed its Motion on August 29, 2025.  *See id.* at 5; Dkt. Sheet.

Absent any opposition from GLT on the timeliness of RSI's Motion, *see generally* Pl.'s Opp., and considering RSI's affirmative arguments, the Court agrees that RSI has met the good cause standard.  RSI exercised due diligence in pursuing complete discovery in this matter in advance of the Court's fact discovery deadline, and it did not know—nor could it have known—about the evidence giving rise to the proposed counterclaims until after the deadline to amend the pleadings had passed.  Therefore, the Court finds that RSI satisfied Rule 16's good cause standard and that its motion may now be evaluated under Federal Rule of Civil Procedure 15.

**B.      Whether Amendment Under Federal Rule of Civil Procedure 15 Is Appropriate**

Pursuant to Federal Rule of Civil Procedure 15, a party may amend its pleading once as a matter of course within either twenty-one days after serving it; or if the pleading is one to which a responsive pleading is required, the earlier of twenty-one days after service of a responsive pleading or twenty-one days after a motion under Rule 12(b), (e), or (f).  Fed. R. Civ. P. 15(a)(1).  If those deadlines have expired, a party may amend its pleading only with the opposing party's written consent or the court's leave.  Fed. R. Civ. P. 15(a)(2).  "The court should freely give leave when justice so requires."  *Id.*

The Third Circuit has adopted a liberal approach to the amendment of pleadings.  *Spartan Concrete Prods., LLC v. Argos USVI, Corp.*, 929 F.3d 107, 115 (3d Cir. 2019); *see also Donovan v. W.R. Berkley Corp.*, 566 F. Supp. 3d 224, 229 (D.N.J. 2021) ("Generally, there is a presumption in allowing the moving party to amend its pleadings.").  However, a court may deny a motion for leave to amend in one of four instances: (1) the amendment would be futile; (2) the moving party has demonstrated undue delay, bad faith, or dilatory motives; (3) the amendment would prejudice

10

the non-moving party; or (4) the moving party was put on notice of deficiencies in its pleading but chose not to resolve them. *U.S. ex rel. Schumann v. AstraZeneca Pharms. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014). Ultimately, the decision of whether to grant leave to amend is within the sound discretion of the Court. *Arab Afr. Int'l Bank v. Epstein*, 10 F.3d 168, 174 (3d Cir. 1993).

Here, GLT opposes RSI's Motion, arguing in part that the proposed amendments are both unduly prejudicial and are futile. The Court addresses each argument individually.

### 1.    Whether Amendment Would Unduly Prejudice GLT

"Undue prejudice is the touchstone for the denial of leave to amend." *Harrison Beverage Co. v. Dribeck Imps., Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1998) (cleaned up). "The issue of prejudice requires that [the court] focus on the hardship to the [non-moving party] if the amendment were permitted." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001) (citing *Adams*, 739 F.2d at 868). "[P]rejudice must be 'undue' and rise to such a level that the non-moving party would be 'unfairly disadvantaged or deprived of the opportunity to present facts or evidence.'" *Korrow v. Aaron's Inc.*, 300 F.R.D. 215, 219 (D.N.J. 2014) (quoting *Harrison Beverage Co.*, 133 F.R.D. at 468). "Specifically, [courts] have considered whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories." *Cureton*, 252 F.3d at 273. "The nonmoving party has a heavier burden than merely claiming prejudice, it must show that an unfair disadvantage or deprivation will result by allowing the amendment." *In re Wellbutrin XL Antitrust Litig.*, 756 F.Supp.2d 670, 681 (E.D. Pa. 2010) (citing *Heyl & Patterson Int'l, Inc. v. F.D. Rich Hous., Inc. of V.I.*, 663 F.2d 419, 426 (3d Cir. 1981)).

RSI asserts that the amendment will not unduly prejudice GLT because "RSI's document production is complete, the parties have been complying with the Court-ordered deposition

11

schedule, and they are currently on track to meet the . . . fact discovery deadline." Def.'s Br. at 12. GLT counters that the proposed counterclaims are only permissive and "would unfairly prejudice GLT by injecting unrelated factual and legal issues into the case and expanding discovery, thereby impairing GLT's ability to litigate its own claims." Pl.'s Opp. at 14. GLT further argues that RSI's counterclaims are not compulsory because they "have no bearing [on] whether RSI breached the parties' [MSA]" and they "target third parties rather than GLT." *Id.* at 14. GLT continues that RSI's proposed counterclaims "would have no bearing on GLT's entitlement to relief on its affirmative claims against RSI nor provide any basis to dismiss the Complaint," *id.* at 15, and would "prejudice GLT by forcing it to divert resources from its own claims to address meritless allegations related to separate contracts and separate parties," *id.* at 16.

In reply, RSI contends that its counterclaims are compulsory, and even if they are merely permissive, "[n]o possible prejudice could flow to GLT" because fact discovery is already complete. Def.'s Reply at 4. RSI further asserts that, once it determined it would file this motion, it offered to defer any remaining depositions and seek a corresponding extension of the fact discovery deadline until after the pleadings were set, but GLT declined. *Id.* at 4.

a.    <u>Whether RSI Asserts Any Compulsory Counterclaims</u>

"'In determining whether to permit a party to add a counterclaim, the court should consider *inter alia* whether the counterclaim is compulsory.'" *Dey v. Innodata Inc.*, No. 18-978, 2019 WL 4410085, at *3 (D.N.J. Sept. 13, 2019) (quoting *Mt. Laurel Concrete, Inc. v. Orleans Homebuilders, Inc.*, No. 08-1553, 2009 WL 10689741, at *1 (D.N.J. Feb. 23, 2009)). "Federal Rule of Civil Procedure 13 'distinguishes between two types of counterclaims, compulsory and permissive.'" *Id.* (quoting *Mt. Laurel Concrete, Inc.*, 2009 WL 10689741, at *1). Under Federal Rule of Civil Procedure 13, a compulsory counterclaim "arises out of the transaction or occurrence

12

that is the subject matter of the opposing party's claim" and "does not require adding another party over whom the court cannot acquire jurisdiction."  Fed. R. Civ. P. 13(a).

"It is well-established that the words 'transaction or occurrence' in Rule 13(a) are not interpreted literally."  *Korrow v. Aaron's Inc.*, No. 10-6317, 2015 WL 7720491, at *6 (D.N.J. Nov. 30, 2015) (citation omitted).  "For a claim to qualify as a compulsory counterclaim, there need not be precise identity of issues and facts between the claim and the counterclaim; rather, the relevant inquiry is whether the 'counterclaim bears a logical relationship to an opposing party's claim.'"  *Transamerica Occidental Life Ins. Co. v. Aviation Off. of Am., Inc.*, 292 F.3d 384, 389 (3d Cir. 2002) (quoting *Xerox Corp. v. SCM Corp.*, 576 F.2d 1057, 1059 (3d Cir. 1978)).  "A logical relationship exists where separate trials on each of the claims would duplicate the efforts of the parties and the courts."  *Dey*, 2019 WL 4410085, at *4 (citing *Transamerica Occidental Life Ins. Co.*, 292 F.3d at 389).  "A duplication would occur where claims involve the 'same factual issues, the same factual and legal issues, or are offshoots of the same basic controversy between the parties.'"  *Id.* (quoting *Great Lakes Rubber Corp. v. Herbert Cooper Co.*, 286 F.2d 631, 634 (3d Cir. 1961)).  "Therefore, 'a detailed analysis must be made to determine whether the claims involve: (1) many of the same factual issues; (2) the same factual and legal issues; or (3) offshoots of the same basic controversy between the parties.'"  *Eisai Inc. v. Sanofi-Aventis U.S., LLC*, No. 08-4168, 2012 WL 32202, at *9 (D.N.J. Jan. 5, 2012) (quoting *Xerox Corp.*, 576 F.2d at 1059).

Here, the Court finds that three of RSI's proposed counterclaims are not compulsory because "although there may be some areas involving similar factual or legal issues" between them and GLT's claims, they are not "offshoots of the same basic controversy between the parties . . . such that the issues sought to be tried . . . are significantly different from one another and will likely require the testimony of different witnesses and different documentary proof."  *Eisai Inc.*,

2012 WL 32202, at *11 (cleaned up).  GLT's affirmative claims will require GLT to demonstrate the existence of a contract with RSI, RSI's breach of that contract, a resulting injury to GLT from the breach, and RSI's bad faith violation of the implied covenant of good faith and fair dealing inherent to the MSA.  In contrast, three of the four proposed counterclaims—aiding and abetting breach of fiduciary duty, civil conspiracy, and tortious interference with contract—will require vastly different discovery, including but not limited to the existence of a duty of loyalty owed by RSI's non-party former employee; breach of that duty by the non-party former employee; the non-party's intent to breach any duty of loyalty; GLT's intent to aid that breach; the existence of an agreement with unlawful purpose; proof of special damages; the existence and validity of additional employment agreements; Plaintiff's malicious interference with those employment agreements; and damages resulting from the alleged interference.  On its face, Defendant's counterclaims for aiding and abetting breach of fiduciary duty, civil conspiracy, and tortious interference with contract will significantly widen the scope of discovery by requiring testimony of new non-parties and new theories of liability against GLT that are distinct from the alleged breaches of the MSA at the center of this litigation.  To permit inclusion of these counterclaims would effectively shoehorn a separate trial into the existing case.  Accordingly, the Court therefore finds that these counterclaims are permissive.

In contrast, however, the Court finds that RSI's proposed counterclaim for breach of the covenant of good faith and fair dealing is compulsory because it "bears a logical relationship" to GLT's affirmative claims by centering on the same contract (the MSA) in dispute, and involving the same parties (GLT and RSI) to this action.  In turn, because this claim is compulsory, the Court will not deny leave to amend on grounds of prejudice.

b.  Whether the Addition of Permissive Counterclaims Would Unduly Prejudice Plaintiff

As to RSI's permissive counterclaims, the Court finds that, by granting leave to amend, GLT's ability to pursue its own claims and defend against RSI's counterclaims would be unduly prejudiced and its ability to litigate its case would be "seriously impaired." *See Dole v. Arco Chem. Co.*, 921 F.2d 484, 488 (3d Cir. 1990) (noting that a nonmoving party must demonstrate that "its ability to present its case would be seriously impaired were amendment allowed") (citing *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d. Cir. 1989)).

The Court rejects RSI's argument that "no prejudice would result" from permitting the amendment. *See* Def.'s Reply at 3. Although RSI brought this Motion as soon as practicable based on its recent discovery, this case has been pending since October 2023. *See* Dkt. Sheet. After RSI's unsuccessful initial motion practice, the case proceeded into discovery. *See* ECF No. 27 (August 14, 2024 Initial Scheduling Order). Over the course of the next year, the parties engaged in extensive discovery. At the time RSI filed its present Motion in August 2025, fact discovery was set to close on October 2, 2025. *See* ECF No. 57 (July 11, 2025 Amended Scheduling Order).[6] There is no doubt that allowing any one of these permissive counterclaims would further delay this case's resolution and likely impair GLT's own ability to pursue its claims because GLT must be afforded the opportunity to take additional discovery to defend against the counterclaims. As discussed above, that discovery would largely involve new issues and theories of liability not previously explored. *Eisai Inc.*, 2012 WL 32202, at *10 (finding that granting leave to assert a proposed counterclaim "would significantly prejudice [the non-moving party] in light of the progress of this matter to date and the substantial delay in reaching an ultimate resolution

---

[6] Fact discovery closed on October 9, 2025. *See* ECF No. 67 (Sept. 26, 2025 Text Order). As of the date of this Opinion, dispositive motions are due on April 17, 2026. *See* ECF No. 89 (Feb. 4, 2026 Amended Scheduling Order).

that would likely result."). Importantly, RSI will not be prejudiced by the Court's refusal to permit these counterclaims here—nothing prevents RSI from filing a separate suit, naming all proper parties. Indeed, RSI appears to have already done so in at least one other case. *See Revenue Solutions Inc. v. Murphy*, Civ. A. No. 2583CV01144 (Mass. Super. Ct. 2025).

Because the Court finds that RSI's permissive counterclaims would unduly prejudice GLT, RSI's Motion for Leave to Amend its answer and assert counterclaims for aiding and abetting breach of fiduciary duty, civil conspiracy, and tortious interference with contract is denied.

2.    Whether Defendant's Counterclaim for Breach of the Implied Covenant of Good Faith and Fair Dealing is Futile

Having determined that amendment to include the three permissive counterclaims must be denied because of undue prejudice, the Court turns to the remaining proposed compulsory counterclaim for breach of the covenant of good faith and fair dealing to determine whether its addition would be futile. "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted. *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). Accordingly, futility is governed by the same standard of legal sufficiency as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 243 (3d Cir. 2010). Under that standard, a court must accept all factual allegations in the proposed amended pleading as true and view them in the light most favorable to the plaintiff. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022).[7] Although a complaint need not

---

[7]   Each party submitted excerpts of discovery in its briefing for the Court's consideration. *See* ECF Nos. 63-3 to 63-26 (Pl.'s Exs. 1-24); ECF Nos. 69-2 to 69-12 (Def.'s Exs. A-K). To the extent either party relies on these materials to support or refute allegations in the proposed amended answer and counterclaims, the Court declines to consider them because the Court must accept all factual allegation in the proposed answer and counterclaims as true. *See Doe*, 30 F.4th at 340; *see also Eads v. United States*, No. 21-17369, 2024 WL 278720, at *10 (D.N.J. Jan. 25, 2024) (stating that "in considering a motion to amend pleadings, a court 'considers only the pleading, exhibits attached to the pleading, matters of public record, and undisputedly authentic documents if the party's claims are based upon the same.'") (quoting *Love v. Does*, No. 17-1036,

16

contain detailed factual allegations, "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). Moreover, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. As such, "the trial court may properly deny leave to amend where the amendment would not withstand a motion to dismiss." *Massarsky v. Gen. Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983).

The parties agree that Virginia law governs this claim. *See* Pl.'s Opp. at 26, n.45 ("RSI contends, and GLT does not dispute for purposes of the instant motion, that Virginia law applies to this counterclaim because it is the choice of law the parties have agreed to in the [governing contract]."). RSI contends that its proposed counterclaim for breach of the covenant of good faith and fair dealing of the MSA is not futile because it alleges "a contractual relationship" with GLT and "a breach of the implied covenant, which requires 'faithfulness to an agreed common purpose and consistency with [RSI's] justified expectations[.]" Def.'s Br. at 11 (quoting *Charles E. Brauer Co. v. NationsBank of Va., N.A.*, 466 S.E.2d 382, 386 (Va. 1996)). According to RSI, "GLT alleges that the MSA is an enforceable contract between the parties" and "GLT's improper dealings with RSI's former employees . . . were inconsistent with RSI's justified expectations of how the parties would deal with one another under the MSA and were bad faith actions that harmed RSI." Def.'s Mot. at 11-12 (citing Am. Answer and Countercls. ¶¶ 22-23, 37-62, 65-67, 123, 125-29). GLT responds that the counterclaim is futile for three reasons: (1) it is not an independent tort but a

2020 WL 5760447, at *3 (D.N.J. Sept. 28, 2020)).

17

claim for breach of contract, which RSI does not assert; (2) "GLT plainly had no duty under the [MSA] to renegotiate its terms to GLT's detriment or to refrain from seeking redress for RSI's breaches of the [MSA][,]"; and (3) RSI fails to plead cognizable damages proximately caused by GLT's conduct. *See* Pl.'s Opp. at 26-27. RSI replies that "[t]here is no need for RSI to respond to GLT's argument that there is 'no tort claim' for breach of the implied covenant . . . [because] RSI never made any such contention." *See* Def.'s Reply at 9, n.5. RSI addresses GLT's damages argument by pointing to allegations it contends plausibly plead damages resulting from GLT's conduct. *See id.* at 7, 9 (citing Prop. Am. Answer & Countercls. ¶¶ 33-37, 41-42, 46-47, 50-51, 56-61, 125-28).

To properly plead a claim for breach of the implied covenant of good faith and fair dealing, the moving party "must bring this claim as part of a count for breach of contract, rather than as an independent tort." *Morris v. Wilmington Sav. Fund Soc'y*, 360 F. Supp. 3d 363, 369 (W.D. Va. 2018) (citation omitted); *see also JTH Tax, Inc. v. Aime*, 984 F.3d 284, 294, n.8 (4th Cir. 2021) (citing cases); *Stoney Glen, LLC v. S. Bank & Tr. Co.*, 944 F. Supp. 2d 460, 465-66 (E.D. Va. 2013) (same); *Goodrich Corp. v. BaySys Techs., LLC*, 873 F. Supp. 2d 736, 742 (E.D. Va. 2012) (same).

Here, RSI has only proposed an independent claim for breach of the implied covenant of good faith and fair dealing; it is not properly proposed as a breach of contract claim under Virginia law. Therefore, the Court finds that RSI's counterclaim is futile because no such independent cause of action exists under Virginia law.

Further, to the extent RSI contends that it has brought its breach of the implied covenant of good faith and fair dealing as a breach of contract claim, *see* Def.'s Reply at 9, n.5., the Court finds that the counterclaim is still futile because RSI has not alleged the existence of an enforceable

18

contract. "In Virginia, the elements of a claim for breach of an implied covenant of good faith and fair dealing are (1) a contractual relationship between the parties, and (2) a breach of the implied covenant." *Stoney Glen, LLC*, 944 F. Supp. at 466 (internal citation omitted). In its proposed counterclaim, RSI does not specifically allege the existence of a valid and enforceable MSA, which is necessary for a breach of the implied covenant of good faith and fair dealing. Instead, RSI states that *GLT* alleges its existence. *See* Prop. Am. Answer & Countercls. ¶ 123 ("GLT alleges that the MSA is a binding and enforceable contract between RSI and GLT."). Indeed, RSI contends that the MSA was "missing several terms and conditions that would ordinarily be included . . . and also lacked key details such as pricing terms, rates and payment milestones." Prop. Am. Answer & Countercls. ¶ 22; *see also id.* ¶ 26 (describing the MSA as "a wholly inadequate subcontract that lacked terms that were critical to RSI"). But "a contract must contain all material terms to be enforceable." *Greer v. Nissan N. Am., Inc.*, 2025 WL 42644, at *4 (W.D. Va. 2025) (citing *Dean v. Morris*, 756 S.E.2d 430, 433 (Va. 2014); *Hayden v. Hayden*, 53 Va. Cir. 9 (2000) (explaining that a binding contract must be complete meaning that it "embraces all the material terms" and holding that the agreement in question was an incomplete contract because it was "missing material terms"). RSI cannot now argue it is properly asserting a breach of the implied covenant of good faith and fair dealing as a breach of contract claim when it does not allege the existence of a valid contract.

**CONCLUSION**

For the foregoing reasons, [8] Defendant's Motion to amend its answer and add counterclaims, ECF No. 58, is **DENIED WITHOUT PREJUDICE**.   An appropriate Order follows.

s/Elizabeth A. Pascal
ELIZABETH A. PASCAL
United States Magistrate Judge

cc:  Hon. Karen M. Williams, U.S.D.J.

---

[8]   Because the Court finds denial of leave to amend is appropriate on these grounds, the Court need not reach GLT's additional arguments concerning futility or bad faith. *See* Pl.'s Opp. at 19-25 (asserting futility arguments pursuant to choice-of-law analysis), 26-27 (asserting additional reasons why RSI's good faith and fair dealing counterclaim is futile under Virginia law), 27-28 (asserting that RSI "ginned up claims" in bad faith and amendment should be denied); *see also* Pl.'s Supp. Br. at 3-15 (asserting additional futility arguments pursuant to choice-of-law analysis).   The Court also declines to consider GLT's new argument concerning the Noerr-Pennington doctrine because it was improperly raised. *See Smithkline Beecham PLC v. Teva Pharms. USA, Inc.*, Nos. 04-0215, 05-0536, 2007 WL 1827208, at *2 (D.N.J. June 22, 2007) ("[N]ew arguments cannot be raised by the non-movant in a sur-reply because the moving party does not have an opportunity to respond to newly minted arguments raised in a sur-reply.").